## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## CASE NO.  14-80218-CIV-BLOOM/VALLE

JILL WILE,

      Plaintiff,

v.

FINANCIAL INDUSTRY
REGULATORY AUTHORITY, INC.,

      Defendant.

_____/

## <u>ORDER</u>

**THIS CAUSE** is before the Court on Defendant's Motion for Summary Judgment, ECF No. [37], filed on October 20, 2014.  The Court is fully advised after careful review of the record, the parties' briefs, and the applicable law.

### I.       Background

Plaintiff filed her Complaint on February 11, 2014, seeking damages and remedies for alleged unlawful disability, sex, and age discrimination and retaliation under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq*.; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*.; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*.; and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01, *et seq*., after she was terminated from a career with Defendant lasting over twenty years.

Plaintiff started with Defendant's predecessor, the National Association of Securities Dealers, in 1988 as a staff attorney in the Dispute Resolution division.  Defendant is an independent securities regulator, and the Dispute Resolution division offers arbitration and mediation to resolve securities disputes.  Plaintiff was promoted several times during her career, and in 2003, she was promoted to Deputy Regional Director of Defendant's Dispute Resolution

office in Boca Raton, Florida.  Defendant has other Dispute Resolution offices across the country, including in Los Angeles, New York, and Chicago.

According to Defendant, as Deputy Regional Director, Plaintiff was responsible for overseeing all aspects of the administration of Defendant's southeast region from the receipt of the arbitration case until hearings were scheduled.  Plaintiff assisted the Regional Director in the administration and supervision of the Boca Raton Dispute Resolution office.  Plaintiff also assumed the administrative and supervisory duties of the Regional Director in the event of the Regional Director's absence.

According to Plaintiff, accepting the position of Deputy Regional Director in 2003 resulted in no change in Plaintiff's responsibilities.  In 2006, Plaintiff's arbitration caseload diminished, and she primarily assumed supervisory responsibility for the Processing/Logistical and Case Assistants, as well as their respective managers.  Kevin Rosen, Case Assistant Manager—a position at a pay grade lower than Plaintiff—was responsible for supervising the remaining group of staff, the Case Administrators.  Manly Ray became the Regional Director of the Boca Raton office in 2010.  At that time, Plaintiff explains, the duties of Plaintiff and Rosen switched—and 90 percent of Plaintiff's duties was served as a "Case Administrator Manager" ("CAM"), who was responsible for coordinating all cases in the Boca Raton office from filing to hearing.  Defendant asserts that Plaintiff was never referred to as a CAM, and the CAM position performed other duties that Plaintiff was never responsible for, including: managing individual case assignments, serving as a liaison between parties and arbitrators, and drafting and serving awards.

Meanwhile, the number of cases submitted to Defendant's Dispute Resolution division had been declining since 2008.  In 2009, 7,137 arbitration cases were filed; in 2010, only 5,680

cases were filed; and the number of cases steadily declined each year.  In 2013, only 1,604 arbitration cases were filed through May.  Defendant addressed the declining case volume by reducing its staff in all regional offices of the Dispute Resolution division.  Defendant decided that the Deputy Regional Director position was not cost-effective, and that the CAM position could replace it.  By the time Plaintiff's position was eliminated, she was the only remaining Deputy Regional Director in Defendant's Dispute Resolution division.

In 2010 and 2011, Plaintiff received favorable performance reviews from Ray.  Though, in October of 2010, Ray sent Plaintiff home for inappropriate dress, and Ray began to observe several deficiencies in Plaintiff's performance.  Ray, using a self-described "softer approach," did not reflect these deficiencies in Plaintiff's performance reviews.

Several incidents followed between Ray and Plaintiff.  One took place in 2011, which involved a decision to remove several arbitrators after receiving some complaints.  That decision was reversed by senior management and was noted in Plaintiff's subsequent performance review.  Another incident took place in early 2012, which involved Ray asking Plaintiff to judge a mock arbitration competition.  Plaintiff objected due to her fear of public speaking, a panic and anxiety disorder—but she eventually participated.

Plaintiff received a letter from Ray on February 16, 2012, which reflected the bonus Plaintiff received and included a message from Ray which stated: "Jill—another great year!  Thank you for all that you do."  On April 30, 2012, Ray held a meeting with Plaintiff regarding her "management deficiencies."  At that meeting, Ray presented Plaintiff with three options: (1) a demotion, (2) termination with severance, or (3) a performance improvement plan.  Plaintiff took a short leave of absence soon after that meeting.

Plaintiff filed her first internal complaint alleging age, sex, and disability discrimination on May 7, 2012 with Chris Snyder, the Associate Director of Human Resources, who works in Defendant's New York City office.  Plaintiff filed a second complaint on May 14, 2012, alleging that Ray was discriminatorily treating Plaintiff differently from Rosen.  Snyder's supervisor, John Braut, conducted an investigation.  Braut did not find a basis for discrimination, but held a meeting with Ray and Plaintiff.  Plaintiff was not demoted, not terminated with severance, nor did Plaintiff receive a performance improvement plan.  Plaintiff filed a third complaint on June 3, 2012, alleging further discrimination and retaliation.

Plaintiff took a medical leave of absence from July 26, 2012 to October 17, 2012.  While Plaintiff was on absence, Ray conducted an employee satisfaction survey, to which some of Plaintiff's direct reports responded.  At some time around the end of 2012 and the beginning of 2013, the Deputy Regional Director position did not exist in Defendant's New York, Chicago, and Los Angeles offices.

On February 12, 2013, the Vice President of Human Resources, Tracy Johnson, visited Defendant's Boca Raton office.  Johnson met with Plaintiff, and also met with two members of Plaintiff's staff.  On Sunday, February 17, 2013—the day before President's Day, a holiday Defendant observes—Plaintiff e-mailed a fourth complaint to Johnson, alleging further discrimination and retaliation.  Johnson forwarded the fourth complaint on Tuesday, February 19, 2013 to Gary Lipkin, in-house counsel for Defendant, and copied Snyder and Braut.  An hour later, Braut sent an e-mail to Snyder asking for an "exit pack" for Plaintiff.  By 5:00p.m. that day, Braut sent an e-mail confirming the elimination of the Deputy Regional Director position in the Boca Raton office to Linda Fienberg, the President of the Dispute Resolution division.

Fienberg quickly replied that she supported the decision to terminate the Deputy Regional Director position.

On February 20, 2013, the day on which Plaintiff's performance evaluation review was scheduled, Ray, Braut, and Richard Berry, Defendant's Director of Case Administration, met with Plaintiff, where she was informed that her position was being eliminated effective March 1, 2013.  Plaintiff was offered a severance package and her 2012 performance evaluation.  Plaintiff did not discuss her performance, asked no questions before leaving, and never applied for any other position with Defendant.  The instant lawsuit followed.

## II.    Legal Standard

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including inter alia, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id*. (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Further, the Court does not weigh conflicting evidence.

*See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (*quoting Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

## III.   Discussion

### a.  Plaintiff's Discrimination Claims

Plaintiff has conceded that she does not oppose Defendant's motion for summary judgment on her gender and disability discrimination claims. *See* ECF No. [41] at 2-3. Accordingly, summary judgment is GRANTED as to these claims.  The claims which remain for

discussion are Plaintiff's claims of retaliation in violation of the ADA, Title VII, the ADEA and the FCRA.[1]

### b.  Plaintiff's Retaliation Claims

Where, as here, there is no direct evidence of unlawful gender, age, or disability-based retaliation, a plaintiff typically must show indirect evidence of retaliation using the burden-shifting framework set out in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). "Title VII retaliation claims require that once plaintiff establishes a prima facie case, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action.  If the employer offers such legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation." *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997) (internal quotations and alterations omitted)).  These requirements also apply to retaliation claims under the ADA, the ADEA, and the FCRA.  *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998) ("We assess ADA retaliation claims under the same framework we employ for retaliation claims under Title VII."); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1269 (11th Cir. 2001) ("[W]e typically apply legal standards developed in Title VII and ADEA cases interchangeably."); *Muggleton v. Univar USA, Inc.*, 249 F. App'x 160, 163 (11th Cir. 2007) ("[T]he analysis of retaliation claims brought under the FCRA is patterned after Title VII.") (citing Harper, 139 F.3d at 1387).

---

[1] In a Title VII case, "[a] plaintiff . . . need not prove the underlying discriminatory conduct that he opposed was actually unlawful in order to establish a prima facie case [of retaliation] and overcome a motion for summary judgment." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997).  "A plaintiff can establish a prima facie case of retaliation under the opposition clause of Title VII if he shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Id.*  Defendant does not address the issue of whether Plaintiff had a good faith, reasonable belief, nor does Defendant address the issue of whether the reasoning from *Little* applies to claims of retaliation under the ADA, the ADEA, and the FCRA. Accordingly, Defendant concedes these issues *sub silentio*.

### i. Prima Facie Case

"To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate: (1) that he engaged in statutorily protected activity; (2) that he suffered adverse employment action; and (3) that the adverse employment action was causally related to the protected activity." *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387-88 (11th Cir. 2007). Defendant's arguments regarding Plaintiff's prima facie case address only the element of causation, and the Court's analysis is, accordingly, so focused.

The causal link element is "construe[d] . . . broadly, so that a plaintiff merely has to prove that the protected activity and the adverse action are not completely unrelated." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (internal quotations, alterations and citations omitted).  "In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1278 (11th Cir. 2008)  "For the purposes of a prima facie case, close temporal proximity may be sufficient." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (internal quotations and citations omitted), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).  "When an employer contemplates a given action before the harassment takes place, temporal proximity between the action and the incident of harassment alone will not suffice to show causation." *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1232 (11th Cir. 2006).  "Temporal proximity, without more, must be very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007). *See also Williams v. Waste Mgmt., Inc.*, 411 F. App'x 226, 229-30 (11th Cir. 2011) (two month temporal proximity not "very close" as required to establish the causal connection).

Here, taking the evidence in the light most favorable to Plaintiff, the non-moving party, the record reflects a temporal proximity of one hour between the awareness of the filing of Plaintiff's fourth internal complaint and the decision to move forward with Plaintiff's termination.  Plaintiff filed her fourth internal complaint on February 17, 2013 by e-mailing it to Johnson, the Senior Vice President of Human Resources, who then circulated the complaint to Lipkin, Snyder, and Braut on February 19, 2013 at 9:47 a.m.  *See* ECF No. [43-31] at 2.  Braut replied about 10 minutes later, stating, "This is what she does – they always come after a weekend and usually before a performance discussion.  She probably is panicking."  *Id.*  Then, less than one hour after receiving the complaint from Johnson, Braut asked Snyder: "Can you get me an exit pack that I can give to [W]ile?"  ECF No. [43-32] at 2.  By 5:00 p.m. that day, Berry sent an e-mail to Fienberg to "confirm" the elimination of Plaintiff's position, and that "she will be offered a generous package . . . Her last day will be March 1, 2013."  ECF No. [43-20] at 2.  Fienberg replied at 5:05 p.m. to "support the proposed course of action."  *Id.*  Based on this evidence, there is a sufficient basis for a reasonable jury to infer causation.  *See, e.g.*, *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (finding sufficient basis for jury question of temporal proximity where denial of overtime to employee began immediately after a grievance meeting where employee protested his suspension).

Defendant argues that no causal connection exists here because Plaintiff has not shown that the decision-makers, Fienberg and Berry, were aware of the protected conduct at the time they made the decision to eliminate Plaintiff's position.  Defendant contends that "neither the Court nor the jury can impute knowledge to a decision-maker who has sworn no *actual* knowledge."  ECF No. [48] at 8 (citing *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1156 (11th Cir. 2002)).  Here, however, unlike in *Brochu*, Fienberg and Berry have not exactly sworn

no actual knowledge of the complaints at the time they made their decision—their recollections during their deposition testimony were hazy.  *See* ECF No. [38-11] at 9-12; ECF No. [43-6] at 7. Nor have they sworn that the decision to terminate Plaintiff's position was finalized prior to February 19, 2013—at best, Fienberg merely states that they began discussing before that date, *see* ECF No. [43-6] at 7, and although Berry states that the decision was made before he received the fourth complaint, he was unable to specify exactly when the decision was made.  *See* ECF No. [38-11] at 11-12.  The uncertainty of Defendant's employees as to actual knowledge here is sufficient for a reasonable jury to infer knowledge of Plaintiff's complaint to Fienberg and Berry at the time the decision was made to terminate Plaintiff.  Thus, Plaintiff has established a prima facie case of retaliation.

### ii.  Legitimate, Non-Discriminatory Reason

"If a plaintiff establishes a prima facie case of discrimination, the defendant employer must articulate a legitimate, nondiscriminatory reason for the challenged employment action." *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000).  "The employer's burden is merely one of production."  *Id.*  Here, Defendant has met that burden.  Defendant has produced evidence that FINRA's caseload had been steadily declining since 2009, and that the Deputy Regional Director position had been terminated in other FINRA offices.  Plaintiff was the only remaining Deputy Regional Director in FINRA, and Defendant asserts that Plaintiff was terminated as part of a decision by senior management to remove all Deputy Regional Director positions and replace them with positions which had similar responsibilities with lower pay grades.  Thus, in order to survive summary judgment, Plaintiff must provide enough evidence to create a genuine issue of material fact that this legitimate, non-discriminatory reason is pretextual.

### iii.  Pretext

To show pretext, "the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Chapman v. AI Transp.*, 229 F.3d 1012, 1024-25 (11th Cir. 2000).  A plaintiff can show pretext "either by directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  *See also Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 n.1 (11th Cir. 2012) (noting this does not shift the burden to the plaintiff but provides "an opportunity to present evidence from which the trier of fact can find unlawful discrimination"). "If a plaintiff produces sufficient evidence that the employer's proffered reason is merely pretextual, that evidence may sometimes be enough to preclude summary judgment in favor of the employer." *Id.* at 1308-09 (citations omitted).

Plaintiff highlights that although the Deputy Regional Director position was eliminated, 90 percent of her day-to-day responsibilities in that position was as a CAM, which included supervising Case Administrators, who coordinated all arbitration cases in the Boca Raton office. Plaintiff thus argues that sufficient evidence of pretext exists because eliminating the Deputy Regional Director position did not require Plaintiff's termination—rather, the CAM position was not eliminated and was filled with an employee with less experience.  Plaintiff cites two cases to support this argument: *Benson v. Tocco, Inc.*, 113 F.3d 1203 (11th Cir. 1997), and *Gardner v. Aviagen*, 454 F. App'x 724 (11th Cir. 2011).

In *Benson*, an employee filed an ADEA claim against his former employer after being terminated as a result of the employer's reduction in force.   The employee, Benson, was informed at the time of his termination that he was included in the reduction in force for economic reasons and not due to job performance issues.   The employee inquired whether the employer would attempt to either find him another position or maintain him at a reduced salary, which the company indicated they would not. At the time of the employee's termination, he held the position of "Personnel Manager." The employee alleged that after he had contacted the employer's counsel to express his concerns that his termination was discriminatory because of his age, the employer modified an advertisement for a vacant position from "Personnel Manager" to "Personnel Supervisor."   Another employee was selected to fill the "Personnel Supervisor" position, but the position became vacant after three months.   After applying for the newly-vacant position, though eight months after the employee's termination, he was not selected, even though, the employee alleged, he had substantially the same skills as the person hired.   The district court granted summary judgment in favor of the employer, determining that the employee was unable to establish a prima facie case of discrimination.   Reversing on this part, and affirming on others, the Eleventh Circuit explained that the employee introduced sufficient evidence to create a jury issue of pretext in light of the employees' comparable qualifications, statistical disparities in the employer's rate of termination, and the employer's "apparent failure to investigate the possibility that Benson might have had the necessary skills to adapt to a restructured human resources position."  *Benson*, 113 F.3d at 1212.

In *Gardner*, an employee sued her former employer, a poultry company, for sexual harassment and retaliation under Title VII after she was terminated once she refused a reassignment, which took place after she reported some incidents of sexual harassment.   The

employee's first job was removing toenails from chicks. She was then transferred to another facility where she worked on the production floor helping the company ship out eggs.  After the employee traveled with the facility to a new location, she began work as a computer associate—spending 70% of her time on the production floor and the remaining time doing clerical work. After working as a computer associate for nearly 10 years, the employee reported sexual harassment to management.  One month later, the employee was told her position was being eliminated and that the only way she could stay at the company was as a clerk in another department.  The employee refused and she was fired.  Reversing the district court on the issue of the timeliness of her EEOC charge, the Eleventh Circuit held the employee established a prima facie case and provided enough evidence to create a genuine issue of material fact that the employer's legitimate non-discriminatory reason, the need to cut costs, in reassigning the employee was pretextual. The Court reasoned that her position, which the employer claimed needed to be cut for financial reasons, was not actually eliminated because new employees were performing similar tasks that the employee was responsible for prior to her termination. *Gardner*, 454 F. App'x at 728-29.

The Court finds *Benson* and *Gardner* instructive. Like in *Benson*, the evidence—taken in the light most favorable to Plaintiff—indicates that at the time the Deputy Regional Director position was eliminated, Defendant did not make any consideration to determine whether Plaintiff could have filled the CAM position, nor any other, after her position was eliminated. Also, like in *Gardner*, the CAM position was one that had responsibilities similar to those Plaintiff held as Deputy Regional Director.

Defendant points out that in *Gardner*, the employer had made inconsistent statements to the Alabama Department of Industrial Relations that the employee's position was not actually

eliminated. Defendant also argues that *Benson* is distinguishable because, here, Plaintiff declined to discuss her performance when she was terminated and did not make an inquiry about any other positions with Defendant.

These factual differences are not dispositive, however.  The fact that Defendant has not made stark inconsistent statements like the employer in *Gardner* does not change the persuasiveness of the evidence, taken in the light most favorable to Plaintiff, of the overlap between Plaintiff's role as Deputy Regional Director and the responsibilities of the CAM position.  This overlap, combined with Defendant's resolve that elimination of the Deputy Regional Director position necessarily required termination of Plaintiff, creates a reasonable inference that the purpose of eliminating Plaintiff's position, at that particular moment, was to indeed terminate and replace her.  *See Mazzeo v. Color Resolutions Int'l, LLC.*, 746 F.3d 1264, 1271 (11th Cir. 2014) ("A plaintiff may demonstrate that [s]he was replaced by showing that after h[er] termination, some of h[er] former responsibilities were delegated to another employee, in addition to the other employee's own responsibilities.") (citing *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987)).  The fact that Plaintiff did not inquire about other positions after her termination was announced does not change the reasonable inference drawn from the e-mail Berry sent to Fienberg—that Plaintiff was to be terminated after her position was eliminated.  *See* ECF No. [43-20] at 2.  In other words, it is reasonable to infer that the decision to terminate Wile was already final by the time the termination meeting was held.

Notably, Defendant has not asserted that its legitimate, non-discriminatory reason for terminating Plaintiff were her performance issues.  Nor does Defendant assert the Plaintiff's performance issues as a basis for not considering her for another position.  Even if Defendant had, the closeness in time—one hour—between the written confirmation of the decision to

eliminate Plaintiff's position and the awareness of Plaintiff's fourth complaint—is sufficient to create a genuine issue of material fact that Plaintiff's protected activity resulted in her termination taking place sooner than it otherwise would have.  *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1270-71 (11th Cir. 2010) ("We emphasize that Title VII's anti-retaliation provisions do not allow employees who are already on thin ice to insulate themselves against termination or discipline by preemptively making a discrimination complaint. The record does establish that Royal Atlantic had legitimate non-discriminatory reasons to fire Alvarez before she complained, and it remained free to act on those reasons afterward. The one thing Royal Atlantic could not lawfully do is fire her earlier than it otherwise would have *because* she complained about discrimination.") (emphasis in original).

For these reasons, the Court finds that Plaintiff has provided sufficient evidence from which a reasonable jury could conclude that Defendant's stated reason for terminating Plaintiff was pretextual.  Summary judgment on Plaintiff's retaliation claims is therefore denied.

## IV.    Conclusion

On this record, it is for a jury to determine whether there was a retaliatory motive behind Defendant's conduct in terminating Plaintiff. It is therefore **ORDERED AND ADJUDGED** that:

1.    Defendant's Motion for Summary Judgment, **ECF No. [37]**, is **GRANTED IN PART AND DENIED IN PART**;

2.    Plaintiff's Motion for Hearing, **ECF No. [46]**, is **DENIED AS MOOT**.

CASE NO.  14-80218-CIV-BLOOM/VALLE

      **DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 16th day of

December, 2014.

                                              _____

                                              **BETH BLOOM**
                                              **UNITED STATES DISTRICT JUDGE**

cc:     counsel of record